**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CRIMINAL NO. 4:21cr16 |
| v. | § | |
| | § | |
| E.I. DU PONT DE NEMOURS AND CO. | § | 42 U.S.C. §§ 7413(c)(1) and 7412(r)(7) |
| and | § | 18 U.S.C. § 2 |
| KENNETH J. SANDEL, | § | 42 U.S.C. § 7413(c)(4) |
| | § | |
| Defendants. | § | |
| | § | |

---

**DEFENDANT E.I. DU PONT DE NEMOURS AND CO.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT ONE OF THE
INDICTMENT UNDER THE STATUTE OF LIMITATIONS**

---

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

    I.    The government's overbroad interpretation of the term "implement" in Part 68.69(d) is incorrect. ................................................................................ 2

        a.    The government's overbroad definition of "implement" is incorrect. ........ 3

        b.    With "implement" properly defined, Count One does not allege a failure to "implement." ................................................................... 7

        c.    *Auer* deference does not apply.  Rather, if "implement" is ambiguous, then the ambiguity must be resolved in DuPont's favor. ........ 8

    II.    Even adopting the government's limitless definition of "implement," nearly all charged conduct is time-barred. .......................................................... 10

        a.    A "continuing course of conduct" is not an avenue for charging pre-limitations conduct. ................................................................... 11

        b.    The government has not shown that the Clean Air Act's criminal provision creates a "continuing offense" under *Toussie*. ......................... 13

            1.    The government fails to identify a statutory basis for its continuing offense argument ....................................................... 14

            2.    Even if Part 68.69(d) could define a continuing offense, it does not do so. .............................................................. 17

CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Delek Ref. Ltd. v. OSHRC,*
845 F.3d 170 (5th Cir. 2016) ...............................................................15

*Diamond Roofing Co. v. OSHRC,*
528 F.2d 645 (5th Cir. 1976) .................................................................8

*Dukane Precast, Inc. v. Perez,*
785 F.3d 252 (7th Cir. 2015) .................................................................6

*Gonzales v. Oregon,*
546 U.S. 243 (2006)............................................................................10

*In re Tyson Foods, Inc.,*
CAA-04-2014-1501(b), 2014 WL 1651529 (E.P.A. Jan. 15, 2014) ..............9

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019)...........................................................................9

*Russell v. United States,*
369 U.S. 749 (1962)...............................................................................7

*Toussie v. United States,*
397 U.S. 112 (1970) ....................................................................... *passim*

*United States v. BP Prods. N. Am., Inc.,*
4:07-cr-00434, ECF No. 1 (S.D. Tex. Oct. 22, 2007) ..............................3

*United States v. Bustamante,*
45 F.3d 933 (5th Cir. 1995) ....................................................12, 13, 18

*United States v. Cisneros,*
203 F.3d 333 (5th Cir. 2000) (*vacated*, 206 F.3d 448 (5th Cir. 2000), *decided on separate grounds sub nom. United States v. Marek*, 238 F.3d 310 (5th Cir. 2001) (en banc)) ...................................................................................13

*United States v. Del Percio,*
870 F.2d 1090 (6th Cir. 1989) ..........................................................17, 19

*United States v. Hershey Creamery Co.,*
No. 1:08-cr-00353 (M.D. Pa. 2008) .........................................................3

*United States v. Jaynes,*
75 F.3d 1493 (10th Cir. 1996) ...........................................................12, 19

*United States v. Kozminski,*
    487 U.S. 931 (1988).................................................................................10

*United States v. Mann Distrib., LLC,*
    No. 1:15-cr-00029 (D.R.I. 2015) ................................................................3

*United States v. Moss,*
    872 F.3d 304 (5th Cir. 2017) ......................................................................9

*United States v. Pac. Gas & Elec. Co.,*
    178 F. Supp. 3d 927 (N.D. Cal. 2016) ...............................................15, 16

*United States v. Roberts Chem. Co.,*
    No. 1:14-cr-00094 (D.R.I. 2014) ................................................................3

*United States v. Samson,*
    433 F. Supp. 3d 1046 (S.D. Tex. 2020) ........................................11, 12, 18

*United States v. Santos,*
    553 U.S. 507 (2008)..................................................................................10

*United States v. Tavarez-Levario,*
    788 F.3d 433 (5th Cir. 2015) ...........................................11, 12, 18, 19

*United States v. Yashar,*
    166 F.3d 873 (7th Cir. 1999) ....................................................................12

## STATUTES

42 U.S.C. § 7412(r)(1) ...........................................................6, 14, 15, 16

42 U.S.C. § 7413(c)(1) ...................................................................14, 16

50 U.S.C. App. § 453(a) ........................................................................16

## OTHER AUTHORITIES

29 C.F.R. §§ 1910.119 ...........................................................................15

40 C.F.R. § 68.10. ...............................................................................4, 17

40 C.F.R. § 68.67(e) ..............................................................................15

40 C.F.R. § 68.67(f) .............................................................................5, 7

40 C.F.R. § 68.69(c) ............................................................................5, 7

40 C.F.R. § 68.69(d) ...................................................................... *passim*

40 C.F.R. § 68.71(b) ..................................................................................................6, 8

40 C.F.R. § 68.73(d)-(e), .................................................................................................6

40 C.F.R. § 68.75(c), (e) .................................................................................................6

40 C.F.R. § 68.77 ...........................................................................................................6

40 C.F.R. § 68.79(a) ................................................................................................5, 6, 7

40 C.F.R. § 68.79(d) .................................................................................................5, 15

40 C.F.R. § 68.81(a), (b), and (d) ...................................................................................6

40 C.F.R. § 68.190(b)(1) .................................................................................................8

Risk Management Programs Under Clean Air Act Section 112(r)(7),
61 Fed. Reg. 31,668 (June 20, 1996) ..............................................................................4

EPA Region 7 RMP Webinar Modules for Facilities with Program Level 3 Processes,
    Module 2: Prevention Program for Level 3 Processes, at 58
    https://www.epa.gov/sites/default/files/2017-09/documents/program3-module2.pdf..............5

## INTRODUCTION

The issue before the court is simple: whether the government can extend the statute of limitations for a criminal offense under *Toussie.* But the government does not even mention *Toussie* until page 41 of its response. Muddling what should be a straightforward issue, the government's brief instead focuses on defeating application of the statute of limitations by inviting the Court to expand the definition of "implement" and to create a new exception to the statute of limitations based on "course of conduct." The government's arguments misread 40 C.F.R. § 68.69(d) and Fifth Circuit precedent, and cannot save Count One from dismissal.

**First**, the government misapplies Part 68.69(d) by defining "implement" in impermissibly broad terms. Part 68.69(d) required DuPont to implement—i.e., introduce, initiate, or put into practice—safe work practices in *June 1999*. The government has not alleged that DuPont failed to do so. Rather, Count One alleges that DuPont violated Part 68.69(d) 12 years later by opening drain valves on the MeSH Vent Header after installing an incinerator in July 2011. Although the government uses the word "implement" in describing DuPont's actions, Count One actually is accusing DuPont of failing to *follow* its safe work practices on an unspecified number of occasions between July of 2011 and November 15, 2014. But Part 68.69(d) addresses implementation, not compliance. Certainly, there are other regulations that cover compliance and related obligations, but the government has *not* charged those regulations in Count One. This Court must apply the proper definition of "implement" and dismiss Count One in its entirety. Even if the Court concludes "implement" is ambiguous, Count One must be dismissed; in a criminal action, the rule of lenity—not *Auer* deference for civil matters—governs.

**Second**, even if the Court were to accept the government's definition of "implement," that could only save the offenses alleged in Count One that occurred after November 7, 2014—and not offenses that were allegedly committed as far back as July 2011. The government attempts to

1

sidestep *Toussie* by arguing that DuPont engaged in a "continuing course of conduct," and that this somehow entitles the government to charge DuPont for alleged offenses that occurred *entirely* outside the statute of limitations merely because a similar offense is alleged to have been committed within the statute of limitations.  There is no such exception to statutes of limitation in the Fifth Circuit, nor could there be one without running afoul of *Toussie*.  The government's argument that Count One actually alleges a "continuing offense" under *Toussie* fares no better.  As the Supreme Court explained in *Toussie,* an administrative regulation cannot create a continuing offense; only Congress can.  The mere fact that an offense may have continuing *effects* does not make it a "continuing offense."  All paths lead to a time-bar, and this Court should, at a minimum, dismiss all offenses alleged in Count One prior to November 7, 2014.

## ARGUMENT

I.  **The government's overbroad interpretation of the term "implement" in Part 68.69(d) is incorrect.**

To justify Count One, the government misconstrues the term "implement" in Part 68.69(d).  It reads the obligation to "implement" safe work practices as *also* encompassing the duty to "follow" those practices in individual instances.  In the government's view, it is allowed to criminally charge a company for failing to implement safe work practices at any time after the company's duty to implement was triggered, even where the company had previously implemented those same practices.  According to the government, the Court must accept this definition because to do otherwise would lead to the absurd result that the Clean Air Act "requires DuPont to 'create a plan' to engage in safe work practices but . . . does not require the company actually to engage in safe work practices."  Opp'n at 19; *see also id.* at 11, 24.

This is a false choice.  Companies are of course required not only to draft but also follow safe work practices.  But the specific Clean Air Act regulation the government selected as the basis

for Count One—40 C.F.R. § 68.69(d)—is not the regulation that creates such a duty.  Rather, Part 68.69(d) requires that companies "develop and implement" safe work practices, while *other* regulations require that they be followed.  A company violates Part 68.69(d) where it fails to draft safe work practices or never puts them in place in the first instance.[1]  But it does not violate Part 68.69(d) where, as charged here, the company allegedly *started* failing to follow its policies more than a decade after they were due to be implemented.  *See* Opp'n at 8-9 (describing Count One).

The term "implement" cannot be expanded to circumvent the statute of limitations for alleged violations of Part 68.69(d).  If there is ambiguity in the word "implement," it must be resolved in DuPont's favor; *Auer* deference does not apply in criminal cases.

### a.  The government's overbroad definition of "implement" is incorrect.

No one disputes that companies are required to create, implement, and then follow safe work practices.  But this motion is about the specific regulation under which the government has chosen to charge Count One—40 C.F.R. § 68.69(d)—and whether that specific regulation means what the government is claiming it means.  An analysis of the term's plain meaning and the regulatory regime confirms it does not.

Part 68.69(d) provides, in relevant part:

> The owner or operator shall develop and *implement* safe work practices to provide for the control of hazards during operations such as . . . opening process equipment or piping. . . .

---

[1] *See* Information, *United States v. Roberts Chem. Co.*, No. 1:14-cr-00094 (D.R.I. 2014) (defendant failed to develop a Risk Management Plan ("RMP") at all); Information, *United States v. Mann Distrib., LLC*, No. 1:15-cr-00029 (D.R.I. 2015) (same); Information, *United States v. Hershey Creamery Co.*, No. 1:08-cr-00353 (M.D. Pa. 2008) (defendant developed an RMP, but took no steps to put it into effect); *see also* Information at 7, *United States v. BP Prods. N. Am., Inc.*, 4:07-cr-00434, ECF No. 1 (S.D. Tex. Oct. 22, 2007) (charging the defendant for failing to implement written procedures to maintain the ongoing integrity of process equipment for failing "since at least 1999 to perform a relief valve study on the ISOM unit to determine whether the F-20 blowdown stack had the capacity to safely release excess hydrocarbons").

(emphasis added).  It became final on June 20, 1996, along with the overall RMP rule.  Accidental Release Prevention Requirements: Risk Management Programs Under Clean Air Act Section 112(r)(7), 61 Fed. Reg. 31,668 (June 20, 1996).  It set a compliance deadline of June 21, 1999.  40 C.F.R. § 68.10.  "Day One" for DuPont's duty to implement its RMP, including safe work practices, was therefore *June 21, 1999*.

The government's position is that DuPont failed to "implement" safe work practices *starting* 12 years later.  It claims DuPont violated Part 68.69(d) each time it allegedly opened the MeSH Vent Header between July 2011 and November 15, 2014 without following its safe work practices.  But even the government's dictionary definitions of "implement" do not support this expansive position.  Rather, they confirm that "implement" means to initiate or put into practice— an act that has an ending.  To name just a few from the government's brief:

- Macmillan's dictionary defines "implement" as "to make something such as an idea, plan, system, or law *start to work and be used*."  Opp'n at 22 (emphasis added).

- The Oxford English dictionary defines "implement" as "To *complete*, perform, carry into effect (a contract, agreement, etc.); to fulfil (an engagement or promise) . . . ." *Id.* at 20 (emphasis added).

- Merriam-Webster's Advanced Learners English dictionary defines "implement" as "to *begin* to do or use (something, such as a plan) . . . ." *Id.* at 21 (emphasis added).

The government's Cambridge Dictionary quotation illustrates the point: "The corporation has implemented a new compensation plan for its sales force."  Opp'n at 23.  If this hypothetical corporation *first* varied from the compensation plan more than a decade after introducing it, that might create legal issues, but no one would call it a failure to "implement" the original plan.

The government's position that Part 68.69(d) governs both whether a company implemented *and* followed safe work practices also does not fit the rest of Part 68.  For instance, Part 68.79 requires that companies conduct compliance audits every three years "to verify that

4

procedures and practices developed under this subpart are adequate and *are being followed*," and to "promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected." 40 C.F.R. § 68.79(a), (d) (emphasis added). Notably, Part 68.79 does not seek to verify that the procedures and practices "are being implemented," but that they are "being *followed*." 40 C.F.R. § 68.79(a) (emphasis added). This indicates that "implemented" and "followed" are not synonymous in Part 68. And, were the government's definition of implement correct, then every "deficiency" identified in a compliance audit would be a failure to implement and a federal crime, even if prior audits had not found that deficiency.[2]

The government's lengthy discourse on the purpose behind the Clean Air Act and its enabling regulations is irrelevant. *See* Opp'n at 1-8; 23-25. Count One and this motion are about just one of many regulations under the Clean Air Act—Part 68.69(d)—and that one regulation is not by itself responsible for effectuating the entire purpose of the Clean Air Act's Risk Management Program. Other regulations ensure safe work practices are followed after they have been implemented, so that Congress's purpose of promoting safety can be met without extending the word "implement" in Part 68.69(d) beyond its meaning. A small sample includes:

- 40 C.F.R. § 68.67(f)—Requires a team with expertise to update and revalidate an evaluation designed to identify hazards at least every 5 years. This includes an evaluation of administrative controls applicable to the hazards (i.e. policies and procedures).

- 40 C.F.R. § 68.69(c)—Requires companies to review operating procedures and certify annually that they are current and accurate.

---

[2] This would run afoul of the purpose of the compliance audit section of the regulation, which is to identify areas for improvement. EPA Region 7 RMP Webinar Modules for Facilities with Program Level 3 Processes, Module 2: Prevention Program for Level 3 Processes, at 58 https://www.epa.gov/sites/default/files/2017-09/documents/program3-module2.pdf (under the slide titled "Compliance Audits," "Think of this as an opportunity, Play inspector for the day").

- 40 C.F.R. § 68.71(b)—Requires refresher training at least every three years to make sure employees understand the hazards of the process.

- 40 C.F.R. § 68.73(d) and (e)—Requires routine inspections on process equipment and repairs to correct deficiencies at a frequency consistent with manufacturer recommendations or process conditions.

- 40 C.F.R. § 68.75(c-e)—Requires employees to be notified of changes if the change impacts the employee's job and for procedures and process safety information to be updated when a change occurs.

- 40 C.F.R. § 68.77—Requires a safety review prior to starting up the process when a change results in changes to the process safety information, including a review of procedures, hazard analysis, and training.

- 40 C.F.R. § 68.79(a)—Requires a compliance audit every 3 years to verify that procedures have been developed, are adequate, and are being followed.

- 40 C.F.R. § 68.81(a), (b), and (d)—Requires investigation of incidents begin within 48 hours of an incident and the development of a system to promptly address findings and recommendations.

- 40 C.F.R. § 68.87(c)(4)—Requires contract owners to assure that their employees "follow" safety rules including safe work practices.

Finally, as the government correctly notes, "Congress also imposed a general duty on owners and operators of equipment using or storing extremely hazardous substances to "design and *maintain* a safe facility taking such steps as are *necessary* to prevent releases . . . ." Opp'n at 24 (quoting 42 U.S.C. § 7412(r)(1)) (italics added by the government).  These other regulations and duties further ensure that Judge Posner's concern in *Dukane Precast, Inc. v. Perez*—a civil case not involving a statute of limitations issue—is not present here.  785 F.3d 252, 255 (7th Cir. 2015) (rejecting Dukane's argument that it merely needed to devise emergency procedures, but not actually follow them during an emergency, "as it would allow the employer to do nothing at all to rescue a worker injured or endangered at work—not even call 911").

**b. With "implement" properly defined, Count One does not allege a failure to "implement."**

Once "implement" is no longer conflated with "follow," it is clear that Count One does not allege a violation—and certainly does not allege a violation within the statute of limitations.

As noted above, "Day One" for DuPont's duty to implement its RMP, including safe work practices, was June 21, 1999.  Count One does not allege that DuPont failed to implement safe work practices by June 21, 1999.  Instead, Count One claims that DuPont failed to implement safe work practices *starting* 12 years later, in July 2011.  As the government's brief explains:

> Count One alleges specifically that DuPont violated § 68.69(d)'s requirements *starting in July 2011* after the installation of a new incinerator system . . . .  The indictment alleges that IBU operators *began* periodically opening drain valves on the MeSH Vent Header around that time without implementing safe work practices set out in a written "line break" procedure . . . , and that *this behavior continued several years*.

Opp'n at 8 (emphases added).[3]

The Indictment is clear that the charged failure to implement in Count One *had not yet started* on Day One, or in the 12 years between Day One and July 2011, during which DuPont would have, at a minimum:

- conducted 4 compliance audits (40 C.F.R. § 68.79(a));

- conducted 2 rounds of Process Hazard Analysis review and revalidation (40 C.F.R. § 68.67(f));

- certified operating procedures were current and accurate 12 times (40 C.F.R. § 68.69(c));

---

[3] The government suggests it may argue that DuPont's training and procedures were lacking at some unspecified time before July 2011.  Opp'n at 36, 38.  This would be inconsistent with the Indictment's charged theory of a failure to implement starting with the July 2011 incinerator installation.  And it cannot be used to fix Count One's improper reliance on Part 68.69(d) to charge post-implementation conduct.  *Russell v. United States*, 369 U.S. 749, 770 (1962) ("[A]n indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.").

- provided 4 rounds of refresher training (40 C.F.R. § 68.71(b)); and

- submitted 2 updates to its RMP (40 C.F.R. § 68.190(b)(1)).

The government's position that a failure to implement can *begin* 12 (or more) years after safe work practices had to be implemented, and can continue indefinitely from then on, leads to absurd results. Taken to its logical conclusion, it means the government could have charged a failure to implement in July of *2111* (and not July of 2011) had the conduct alleged in Count One continued that long. It also means the government could have brought Count One at any time, forever, so long as the conduct alleged to have begun in July of 2011 continued.

### c. *Auer* deference does not apply. Rather, if "implement" is ambiguous, then the ambiguity must be resolved in DuPont's favor.

If "implement" is ambiguous, then it must be construed in DuPont's favor. The government relies on Sixth Circuit precedent in seeking to apply *Auer* deference, but in the Fifth Circuit, *Auer* deference is not applied to regulations with criminal penalties.

In *Diamond Roofing Co. v. OSHRC*, the Fifth Circuit considered whether an OSHA construction regulation applied to an open-sided roof in addition to an open-sided floor. 528 F.2d 645, 649 (5th Cir. 1976). The agency argued the regulation "should be liberally construed to give broad coverage because of the intent of Congress to provide safe and healthful working conditions for employees." *Id.* The Fifth Circuit disagreed, holding that a regulation must be construed based on what it says rather than what the agency claims it was intended to say:

> We recognize that OSHA was enacted by Congress for the purpose stated by the respondents. Nonetheless, *the Secretary as enforcer of the Act has the responsibility to state with ascertainable certainty what is meant by the standards he has promulgated*. Because the Secretary has failed in this regulation to so state, we must conclude that § 1926.500(d)(1) does not apply to open-sided roofs. The Act grants the Secretary—not OSHRECOM or the courts—the means to amend the regulation if he so desires.

*Id.* (emphasis added).

The Fifth Circuit again declined to defer to an agency's interpretation of regulations carrying criminal penalties in *United States v. Moss*.  872 F.3d 304, 308, 314-15 (5th Cir. 2017).  The Outer Continental Shelf Lands Act, or OCSLA, permits criminal penalties against "any person" who knowingly and willfully violated it, and the government contended that a "person" could include a contractor—even though OCSLA's text said it applied to "any holder of a lease or permit" and had never before been used to charge a contractor.  *Id.* at 305, 308-09.  The Court sided with the defense, holding that "[w]here, as here, a regulatory violation carries criminal penalties, the regulation 'must be strictly construed and cannot be enlarged by analogy or expanded beyond the plain meaning of the words used.'"  *Id.* at 308.  "If this case involved only civil sanctions against the appellees," the Court continued, "the government would perhaps ask this court to apply *Auer* deference to its interpretation of the regulations."  *Id.* at 314.  But "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *Id.* at 315 (citation omitted).

No prior judicial decision countenances charging a failure to implement under Part 68.69(d) for periodic conduct alleged to have *started* more than a decade after a company was required to implement its RMP, and this Court should not do so now.  The Government cites *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), in support of *Auer* deference application, but *Kisor* is a civil case that addressed whether *Auer* deference should be abandoned altogether; it has no application here.  The unlitigated administrative civil enforcement actions listed in the government's brief also do not define the meaning a criminal regulation.  *See* Opp'n at 25-26.[4]  In the words of Justice Scalia:

---

[4] None of these civil enforcement actions involve Part 68.69(d) except In re Tyson Foods, Inc. Consent Agreement, CAA-04-2014-1501(b), 2014 WL 1651529 (E.P.A. Jan. 15, 2014).

"The Justice Department, of course, has a very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference." *Gonzales v. Oregon*, 546 U.S. 243, 264 (2006) (concurring in judgment).

If "implement" is ambiguous, it must be construed in DuPont's favor. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). "This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain," but "[i]t also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Id.* This "promote[s] fair notice to those subject to the criminal laws," and "minimize[s] the risk of selective or arbitrary enforcement. *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

DuPont's proposed definition of implement corresponds to that term's ordinary meaning (as the government's own dictionary definitions show) and is consistent with the rest of Part 68. Thus, even if this Court were to conclude that the government's competing definition is reasonable, "the tie must go to the defendant." *Santos*, 553 U.S. at 514.

## II. Even adopting the government's limitless definition of "implement," nearly all charged conduct is time-barred.

Even accepting the government's definition of "implement," conduct occurring outside of the limitations period—i.e., before November 7, 2014—cannot be included under Count One. The government attempts to stretch Fifth Circuit precedent to claim that Count One alleges a "continuing course of conduct" from July 2011 to November 15, 2014, and that this allows Count One to include time-barred conduct. Alternatively, the government offers an argument that the

offense of knowingly failing to implement safe work practices is a "continuing offense" under *Toussie v. United States*, 397 U.S. 112 (1970). The government is incorrect on both accounts.

### a. A "continuing course of conduct" is not an avenue for charging pre-limitations conduct.

Count One alleges that DuPont repeatedly violated Part 68.69(d).[5] The government argues that, if any of those alleged violations occurred within the limitations period and were part of a so-called "continuing course of conduct," then all other violations can be swept in as well without having to go through the test established in *Toussie. See, e.g.*, Opp'n at 12.

This court properly rejected a similar argument in *United States v. Samson*, 433 F. Supp. 3d 1046 (S.D. Tex. 2020), recognizing that it was inconsistent with *Toussie* and Fifth Circuit precedent. The government charged Samson with theft or knowing conversion for collecting his deceased parents' social security retirement benefits for almost 22 years, and Samson was convicted. *Id.* at 1049, 1052. In response to Samson's motion for judgment of acquittal or new trial on limitations grounds, the government argued that it was entitled to rely on conduct outside of the statute of limitations because the offense was a continuing one. *Id.* at 1052.

The court rejected the government's argument. *Id.* at 1053. "Under *Toussie*, the analysis of whether a crime constitutes a continuing offense involves examining the offense itself, not the defendant's particular conduct." *Id.* at 1052 (quoting *United States v. Tavarez-Levario*, 788 F.3d 433, 440 (5th Cir. 2015)). The government's continuing course of conduct argument violated this principle; it was an attempt to extend the statute of limitations not because the offense charged—theft or conversion—is inherently continuing in nature, but because the defendant was alleged *in this particular case* to have engaged in a "covert, long-term scheme" through which he repeatedly

---

[5] The government incorrectly asserts that DuPont is challenging the indictment as duplicitous. Opp'n at 56-59. It is not.

violated the statute.  *Id.* at 1052-53.  To preserve the conviction, therefore, the government was required to prove that the defendant violated the statute within the limitations period, since that was the only conduct for which the jury was permitted to convict him.  *See id.*

The government claims the Fifth Circuit adopted a "continuing course of conduct" exception to the statute of limitations in *United States v. Bustamante*, 45 F.3d 933 (5th Cir. 1995).[6] Opp'n at 41-42.  This reads *Bustamante* too broadly and—as this court explained in *Samson*—is an improper attempt to have the "defendant's particular conduct" considered in determining whether the offense is continuing.  *See Samson*, 433 F. Supp. 3d at 1052 (citing *Toussie,* 397 U.S. at 122 , and *Tavarez-Levario*, 788 F.3d at 436-37); *see also United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999) ("As stated above, *Toussie* extends the limitations period only in cases in which Congress explicitly defines an offense as continuing, or in which the crime by its nature is such that Congress must have intended it to be considered continuing. The government would add to those factors a third one, which is whenever the *charged conduct* is continuous in nature. That would largely swallow the second factor of *Toussie*, which focuses on whether the crime by its nature is such that Congress must have intended that it be treated as a continuing one, and would eviscerate its narrow, selective approach.").

In *Bustamante*, the defendant was convicted of charges including accepting an illegal gratuity.  45 F.3d at 935.  The defendant challenged his conviction on the grounds that the illegal

---

[6] The government also relies on cases from other circuits in support of this proposition.  Opp'n at 12-14.  But all that these cases hold is that a conviction can be affirmed if the government proved the defendant committed an offense within the limitations period.  In that particular procedural context, the fact that there was *also* evidence of offenses outside of the limitations period does not require the conviction to be vacated.  *See, e.g.*, *United States v. Jaynes*, 75 F.3d 1493,  1507 (10th Cir. 1996) (holding that a defendant who had not objected to admission of evidence about conduct that occurred outside of the statute of limitations "could be convicted of the offenses charged in counts one and two if she forged or passed any Treasury checks within five years of the date of the indictment").

gratuity (a guarantee on a personal loan) occurred outside the limitations period. *Id.* at 941. The court described the final loan repayment as *part of* the illegal gratuity and upheld the conviction because the final repayment, and thus the offense, occurred within the limitations period. *Id.* at 939-40. *Bustamante* does not address or hold that a defendant may be liable for an offense that was completed prior to the limitations period, merely because the defendant later committed a second, similar offense within the limitations period. It instead stands for the proposition that a conviction is proper so long as one of the elements of the charged offense occurred within the limitations period. Indeed, that is the only proposition for which the Fifth Circuit has cited *Bustamante*'s limitations analysis in the 26 years since it was decided.[7]

The government has alleged that each instance in which the MeSH Vent Header was drained without "implementing" safe work practices is a completed crime. Opp'n at 18 ("First, they establish that DuPont violated a requirement of 40 C.F.R. § 68.69(d) on November 15, 2014, because *on that date* . . . DuPont employees, acting within the scope of their employment for the benefit of the company, opened process equipment at the IBU without implementing safe work practices to provide for the control of hazards." (emphasis in original)). Each of those instances from before November 7, 2014, is therefore time-barred and should be dismissed.

> **b. The government has not shown that the Clean Air Act's criminal provision creates a "continuing offense" under *Toussie*.**

The government's final argument, that Count One alleges a "continuing offense," also cannot save pre-November 7, 2014 conduct. First, the government's reliance on Part 68.69(d) to

---

[7] *See United States v. Cisneros*, 203 F.3d 333, 348 n.13 (5th Cir. 2000) (*vacated*, 206 F.3d 448 (5th Cir. 2000), *decided on separate grounds sub nom. United States v. Marek*, 238 F.3d 310 (5th Cir. 2001) (en banc)) (citing *Bustamante* for the proposition that "*elements* of a continuing offense, such as we have here, may fall outside the statute of limitations period without running afoul of the statute of limitations," so long as at least one necessary element occurred within the limitations period (emphasis added)).

create a "continuing offense" is contrary to the Supreme Court's statement in *Toussie* that Congress alone can extend a criminal statute of limitations.  Second, even if an agency regulation could define a continuing offense, Part 68.69(d) did not do so—it simply required DuPont to "implement" safe work practices within a particular time frame, placing this case squarely within a category of statutes that courts have recognized do not create continuing offenses.  Even under the government's definition of implement, Count One at most alleges a series of alleged stand-alone violations rather than a single violation, the effects of which allegedly continued *after* all its elements were complete.  That is not a "continuing violation" and it does not extend the statute of limitations; instead, it is a series of violations, each of which is subject to the five-year limit.

Finally, if there is any uncertainty as to whether Count One charges a continuing offense, it must be resolved in DuPont's favor.  *See Toussie*, 397 U.S. at 122 ("Basically we are faced with the task of construing a somewhat ambiguous statute in one of two ways. One way would limit institution of prosecution to a period of five years following the initial violation, while the other could effectively extend the final date for prosecution until as late as 13 years after the crime is first complete. As we have said before: 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" (internal citation omitted)).

### 1.  The government fails to identify a statutory basis for its continuing offense argument.

The government tacitly concedes that 42 U.S.C. § 7413(c)(1), the statute that DuPont is charged with violating, does not itself create a continuing offense.  *See* Mot. at 14-16.  The government urges this Court to instead consider 42 U.S.C. § 7412(r) and 40 C.F.R. § 68.69(d) in

determining whether Count One charges DuPont with a continuing offense.  Neither provision suffices.

The government contends that, because Section 7412(r) allegedly contains durational language, Congress must have intended for violations of 40 C.F.R. § 68.69(d)—one of numerous regulations promulgated under Section 7412(r)—to be a continuing offense.  Opp'n at 50-52. Were this the case, then *every* subpart of Part 68 that could define criminal conduct would automatically be a continuing offense.  The Fifth Circuit has already rejected an argument that at least two other subparts of the analogous OSHA regulation were continuing offenses, so that cannot be right.  *Delek Ref. Ltd. v. OSHRC*, 845 F.3d 170, 178 (5th Cir. 2016) (finding that 29 C.F.R. §§ 1910.119(e)(5) and (o)(4) [equivalent to 40 C.F.R. §§ 68.67(e) and 68.79(d)] are not continuing).

Under *Toussie*, only Congress may extend a criminal statute of limitations.  The government's reliance on the language of Part 68.69(d) is therefore misplaced.  The existence of a continuing offense must be based on "the statute itself, *apart from the regulation,*" because "questions of limitations are fundamentally matters of legislative not administrative decision." *Toussie*, 397 U.S. at 121 (emphasis added).

The government cites a case that seemingly conflicts with *Toussie* in suggesting that it is proper for a court to consider the regulation when the regulation contains the elements of the criminal offense.  Opp'n at 48 (quoting *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927 (N.D. Cal. 2016)).  This reads *Toussie* too narrowly.  The statute at issue in *Toussie did* rely on regulations to define the prohibited conduct, stating:  "[I]t shall be the duty of every male citizen . . . to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules

and regulations prescribed hereunder." *Id.* at 113 (quoting 50 U.S.C. App. § 453(a)).  Those regulations expressly stated that the duty to register was "continuing."  *Id.* at 121.  The Supreme Court nonetheless declined to apply those regulations in determining whether the statute created a continuing offense, since the regulations were the result of administrative rather than legislative action.  *Id.*

PG&E is inapplicable here for another reason.  As the district court in *PG&E* took care to point out, the regulations at issue in that case *pre-dated* Congress's enactment of the statute that criminalized their violation.  178 F. Supp. 3d at 958 n.23; *see also* Mot. at 16 n.3; Opp'n at 48 (quoting *PG&E*'s statement that Congress "adopted" the regulations "by criminalizing their violation," 178 F. Supp. 3d at 957 n. 25).[8]  Here, unlike in *PG&E*, Part 68.69(d) was promulgated twenty-six years *after* Section 7413(c)(1) was enacted, and six years after Section 7412(r).  So, not only did Congress not define a continuing offense itself, it also did not ratify a continuing offense defined in an existing regulation such as in *PG&E*.  There is no precedent permitting this Court to find a continuing offense based only on Congress having authorized an agency to establish enabling regulations, doing so would violate *Toussie*.

---

[8] The regulations at issue in *Toussie* had also been in place for several decades and most federal courts had held that violating the statute was a continuing offense.  397 U.S. at 119.  The government argued that Congress therefore should be deemed to have adopted the regulation's statement that the duty to register was "continuing."  *Id.* at 119-20.  The Supreme Court declined to do so.  "Since there is no specific evidence that Congress actually was aware of this limitations question when it acted—whatever weight such evidence might deserve—and since we are reluctant to imply a continuing offense except in limited circumstances, we conclude that any argument based on congressional silence is stronger in favor of not construing this Act as incorporating a continuing-offense theory."  *Id.* at 120.

### 2. Even if Part 68.69(d) could define a continuing offense, it does not do so.

Even if the language of Part 68.69(d) could be considered in determining whether Count One charges DuPont with a continuing offense, it would not support the government's position. Part 68.69(d) does not create a continuing obligation. Instead, it required implementation of safe work practices within a particular time frame (i.e., by June 1999). *See supra* Parts I.a-b. If a criminal statute requires the defendant to do something by a particular date, then the statute of limitations runs *from that date. E.g.*, *United States v. Del Percio*, 870 F.2d 1090, 1097 (6th Cir. 1989); [9] *see also Toussie*, 397 U.S. at 119 ("[Toussie] was allowed a five-day period in which to fulfill the duty [to register], but when he did not do so he then and there committed the crime of failing to register.").

But even if this Court were to adopt the government's interpretation of "implement," that still does not create a continuing offense. The government believes Part 68.69(d)'s requirement to "implement safe work practices to provide for the control of hazards during operations" is also a requirement to "*follow* safe work practices" during subsequent operations. *See supra* Part I.a; Opp'n at 24, 25, 33. If so, then DuPont allegedly violated the statute *each time* it allegedly cleared the MeSH Vent Header without following line-break procedures. Such conduct is a discrete offense at a moment in time, not a "continuing violation." *See* Mot. at 21.

The government attempts to overcome this in two ways, neither of which has merit.

**First**, the government alleges that DuPont committed a continuing violation because it violated the regulation repeatedly over a period of time. *E.g.*, Opp'n at 41. As explained above,

---

[9] The government attempts to distinguish *Del Percio* on the basis that the regulations at issue required the defendant to take an action by a date certain. Opp'n at 47. As noted above, the RMP regulations required DuPont to take action by a date certain: June 21, 1999. 40 C.F.R. § 68.10.

the government cannot extend a criminal statute of limitations merely by alleging a series of similar, complete violations.[10]  *See supra* Part II.a.  Moreover, a series of criminal acts is distinct from a "continuing offense"—as the government itself acknowledges in its response.  *See* Opp'n at 41-42 ("[T]he Fifth Circuit [has] distinguished… between an offense that is 'complete' before the limitations period but 'has continuing effects after its completion' and an offense that constitutes 'continuing criminal behavior' because it involves criminal acts 'over an extended period of time.'  The court held [that] the doctrine of continuing offenses was applicable *only to the former type of offenses*." (quoting *Bustamante*, 45 F.3d at 942) (emphasis added)).

**Second**, the government contends that the Indictment charged DuPont with a continuing offense because the failure to implement safe work practices has negative effects by "expos[ing] workers axiomatically to hazards—a 'renewed threat of the substantive evil Congress sought to prevent.'"  Opp'n at 53 (quoting *Toussie*, 397 U.S. at 122).  But under *Toussie* and its progeny, the relevant question is not whether the offense might have long-term *effects*—it is whether the *criminal act itself* keeps going even after the last element of the crime is complete.

The Fifth Circuit's opinion in *United States v. Tavarez-Levario*, 788 F.3d 433 (5th Cir. 2015), is particularly instructive.  Defendant Tavarez was indicted for using a counterfeit green card and counterfeit Social Security card to obtain employment.  *Id.* at 436.  The government argued that, while the initial "use" occurred more than five years before the indictment, the defendant had committed a continuing offense because his use of the counterfeit documents "set in motion a process by which the documents continually allowed Tavarez to maintain his employment and provided Tavarez with the ongoing benefits of employment."  *Id.* at 440.

---

[10] Notably, the government does not allege that DuPont employees *never* followed the line break policy. If that were the case, it surely would have been alleged.

The Fifth Circuit disagreed, because the fact that an offense has "continuing benefits" or "continuing effects" does not make it a continuing offense. "[T]he nature of the offense itself must be such that it inherently involves *criminal activity of an ongoing or continuous character*." *Id.* (emphasis added). Although Tavarez's use of counterfeit documents allowed him to reap benefits (employment) over an extended period of time, the actual offense—the "use" of the documents—was the type of act that occurs at a discrete moment in time, and thus was not continuing under *Toussie. Id.*; *see also Samson*, 433 F. Supp. 3d at 1052-53 (for an offense to be continuing under *Toussie*, "[s]ome actual element or action inherent to the offense must involve 'ongoing perpetration' that has 'temporal longevity.' . . . Crimes that are not continuing are complete as soon as each of the elements is met, *even if the offender continues to reap benefits from his crime long after completion*" (emphasis added)); Mot. at 14 (gathering examples of continuing offenses). The potential ill effects of a failure to implement safe work practices are thus not a basis for finding that Part 68.69(d) is a continuing offense.

Nor is it an answer for the government to repeatedly emphasize the importance of the Clean Air Act's regulations. Failing to register for the draft (*Toussie*), failure to comply with Nuclear Regulatory Commission fire safety regulations (*Del Percio*), using counterfeit immigration documents (*Tavarez-Levario*), or committing forgery (*Jaynes*) or theft and conversion (*Samson*) are all serious crimes that can cause real and lasting harm. But because they are crimes that are completed at a discrete moment in time rather than over a period of time (such as conspiracy, kidnapping, or remaining in the country illegally), they are not "continuing offenses" for limitations purposes.

## CONCLUSION

DuPont respectfully requests that the Court dismiss Count One of the indictment or, in the alternative, dismiss all allegations in Count One prior to November 7, 2014.

19

| | |
|---|---|
| Date:  December 31, 2021 | Respectfully submitted,<br><br>/s/ David Gerger<br>David Gerger<br>dgerger@gkfirm.com<br>Ashlee McFarlane<br>amcfarlane@gkfirm.com<br>**GERGER HENNESSY & MCFARLANE, LLP**<br>1001 Fannin St. Suite 2450<br>Houston, Texas 77002<br>713.224.4400 (Tel) \| 713.224.5153 (Fax)<br><br>/s/ Lily Chinn<br>Lily N. Chinn<br>lily.chinn@bakerbotts.com<br>**BAKER BOTTS LLP**<br>101 California Street Suite 3600<br>San Francisco, California 94111<br>415.291.6214 (Tel) \|415.291.6314 (Fax)<br><br>Nadira Clarke<br>nadira.clarke@bakerbotts.com<br>Steve Solow<br>steve.solow@bakerbotts.com<br>**BAKER BOTTS LLP**<br>700 K Street, N.W.<br>Washington, D.C.  20001<br>202.639.7700 (Tel) \| 202.639.7890 (Fax)<br><br>**ATTORNEYS FOR DEFENDANT E.I. DU PONT DE NEMOURS AND CO.** |

## CERTIFICATE OF SERVICE

I filed this motion in the Court's electronic filing system and am emailing a copy to the prosecution the day of filing.

/s/  Lily N. Chinn
Lily N. Chinn